My name is Colin McGrath. I'm a law student at UC Irvine School of Law, working under the supervision of Peter Alperziabi and Catherine Davis, appearing on behalf of Petitioner Lillet Sagatelli. Good. I wish to reserve two minutes for rebuttal. May it please the Court. This Court should reverse the IJ's adverse credibility finding in this case because it was not supported by substantial evidence. As this is a pre-Real ID Act case, in reviewing the IJ's finding for substantial evidence, this Court must review each specific finding to determine whether the general finding is supported by substantial evidence and general conclusory statements are not sufficient. As an example, under Zilin Chen, this Court analyzed the IJ's three specific findings individually, rejected each one, and then stated that the IJ's final general conclusion that, quote, there is just too much that does not make sense, end quote, amounted to nothing more than speculation and conjecture once the specific findings were reversed. We have the same scenario in this case. Each of the IJ's findings are based on fatally flawed reasoning and do not provide substantial evidence in support of her finding. Moving to the issue of the birth certificate, there is no evidence in the record to indicate that Sagatelli knew that the birth certificate contained overwritten entries. What is the burden of proving that? The burden of proof is actually on the government in this case. Why is that? Because under, in Kotka v. Holder, oh, sorry, first of all, under Yemane Berhe, in that case the petitioner did not testify regarding her knowledge and no evidence was presented. There was a lot of corroborating evidence in that case, right? It stands for the broad proposition that standing alone a false document in and of itself may not be sufficient, but in that case there was corroborating evidence. It doesn't seem as if you have that here. That's correct. There was corroborating evidence in this case and in that case, and in this case there would have been corroborating evidence if the IJ had not improperly denied the affidavit. Did she testify at all? Sagatelli did not testify. Why not? Wouldn't it have been a simple matter for her to get up there and swear that she was a Yezdi? Well, she did get up and testify regarding her ethnicity. She did not testify regarding the knowledge of whether she knew. She testified that the fact that she had no knowledge of the certificate, right? Correct. Could she not have done that? Wouldn't that have been a simple matter for her to do? Perhaps, but even in Yemane-Berhe, the petitioner also did not testify. But there was corroborating evidence here. You did not have any. Well, this is the reason why there wasn't any corroborating evidence was because the IJ also denied the various other reasons. But I guess I'm just puzzled as to why she did not testify. I think the burden of proof arguably may have been on her, though you say that that's not the case, but I think that possibly that might be the case. But it seems as if there was just an abject absence of anything whatsoever on her part to ask for continuances, to testify on her own behalf. I may be sympathetically disposed to her, but it seems that there's a burden of proof here that she didn't sustain. Well, in Kotka v. Holder, where the IJ found that there was a— In that case, the government presented direct evidence to indicate that the petitioner may have known that the document was fraudulent and the petitioner did not testify. And there the court stated that it was the combination of the direct evidence— Not to be redundant, but what exactly did she do here other than to maybe belatedly ask for a continuance to allow this gentleman, Marder—what's his name? Marderosian. To come and testify. What else did she do? Well, she had testified previously in the June 4, 2004, hearing regarding her ethnicity. At the July 22, 2005, hearing, she did not testify. All she stated was that her counsel stated that she did not know what had happened to the document. And then the IJ specifically acknowledged that statement, saying that you acknowledged that your counsel— that Zagatelian was not responsible for the overwritten entries. Did the IJ accept that as an established fact in this case, that she was not responsible for the fraudulent document? All we have is that statement in the record. She did not say anything about that specific statement in her order. The problem is we just don't know what the IJ was thinking, and she didn't state whether she believed the explanation. Well, the problem is, as the blocks pointed out, she didn't testify to the contrary. And in Conaca, that was one of the things they thought was really important. He never said, oh, I didn't know it was a phony document. She never said, I didn't know it was a phony document. She was there that day. She'd had notice, right? She'd had notice of the government's position about that this was a phony document. No evidence brought in to show it's not a phony document. The lawyer says blah, blah, blah, but that's not evidence. But she never gets up, which would have been very simple. She never said, gee, I didn't know that was a phony document. But the difference between this case and Conaca is, in Conaca, the newspaper article that was presented, was presented directly in order to support his claim for persecution. Whereas in this case, the birth certificate was just submitted as part of her initial asylum application. Well, it's submitted to, it's the very core of her claim for prosecution, for persecution, isn't it? If her father indeed was not, I can't think of the pronunciation. If her father indeed was not because his nationality was something else, that goes right to the heart of the claim. That's why she was persecuted, because of her father, she says, because of ethnicity. Right? Yes. The difference, it was not... If this isn't supporting that, or wouldn't be designed to support that, it's difficult to know what it was designed to do. That's part of the problem, is we don't... Whereas in Conaca, it was specifically presented to support the claim of persecution. Here, we don't know whether it was... It may have been presented for ethnicity, but also may have been presented just as part of her general identity documents. And there was... It's still the fact that in Conaca, there was direct evidence provided by the government to indicate the petitioner may have known that the document was fraudulent. Here, we don't have any such evidence. There was no burden. In Yemane-Berhe, the petitioner did not testify, and this court found that sufficient to find that the lack of knowledge... Without a showing of knowledge regarding the fraudulent nature of the birth certificate, it can't support an adverse credibility finding, and we have the same situation in this case. Regarding the witness of the cousin who was unavailable, he's unavailable because he had to work. Is that right? Yes. That came to her attention the night before? Right. In the record, she stated that just the day before, they had heard that he had been called out of town two days before for work obligations. He was a truck driver. I'm sort of wondering how the judge is supposed to operate a court when somebody says, I'm not coming to court. I've got to work. That's everybody in this room is in that boat. Under Zilin Chen, it says that IJ must consider all plausible and reasonable explanations regarding the witness's unavailability. And this court has provided some guidance for that kind of situation. In Sidhubi INS, where there the problem was that Petitioner did not bring his father to corroborate his testimony when his father only lived 45 minutes away, and the problem there was that he didn't explain anything. He didn't, quote, Petitioner never testified that his father was ill, out of town, or otherwise indisposed. So this court indicated that had the Petitioner made such an explanation, then presumably under Zilin Chen, the IJ would have had to explain. What I'm trying to get at is how can it be an abuse of discretion to say I'm going to go ahead with the hearing because your witness went to work today instead of coming to court? If a plausible and credible explanation is provided. Well, let's suppose it's true. He went to work. Okay, but the court's in session. The IJ at least needs to take that under consideration, and here we don't have any evidence that Sidhubi did that. It would be an abuse of discretion under the facts of this case? I'm not, it wouldn't, it's hard to say, I don't, it's hard to say whether it would be an abuse of discretion given the facts. When you say he didn't take it into consideration, the IJ did say, you know, I told you a long time ago, I wanted that guy here. I wanted him here to testify. Yes. And she tried to present him. Right. And he doesn't show up because he's got something more important to do with his life. Now, I don't know where you finally came to, the IJ has to say, on two, three, four, five, six, the IJ said, look, I told him to be here. You've had two or three times he hasn't been able to be here for one reason or another, and he's not here today. I'm going forward. I don't know how much time left. Yeah. All I would say on that point is that rather than denying the continuance, the IJ could have either accepted the affidavit that was presented or simply allowed a continuance to bring him, if there's a plausible explanation provided, she could grant a continuance to allow him to at least come back another time. There was only one other time when he was, there was only one opportunity she had to bring him. He had been called for jury duty. Under Zilin Chen, when a plausible and credible explanation is provided, the IJ should at least grant a continuance. You wanted to reserve two minutes, and you're down to a minute, so why don't you reserve the rest of it. Yes, I'll reserve the rest of my time. Thank you. Thank you very much, Mr. Brown. Morning. Please, the court. John Holt for the Attorney General. It's a privilege. So the IJ gave the government all the time it requested, a year, to just do whatever it felt it wanted to do to establish what that document was all about, but wouldn't grant this guy one day to bring the person in who was driving the truck? Judge Block, you gave him three continuances on the 4th of June, 2004. The first time, I don't think the petitioner was aware of the importance of having this witness. It was sort of just, you know, a getting together session, and the IJ said, I think I would like to have some relatives. I don't see how you can hold that against the petitioner. The second time, there was a continuance granted by the government, and yes, I guess this person could have been there if he were not on jury duty, but it was sort of academic. It seems to me that the first real time where the witness was not available was this last occasion, and then the government had all the time in the world to do whatever it needed to do. This person couldn't bring this witness in the next day. Don't you think that's an abuse of discretion? Respectfully submit, it was an abuse of discretion. Three strikes, three times. But I don't see any strikes. Maybe I'm missing the strike. I was a bad ball player, I guess. I struck out a lot, but I don't see myself striking out here. Also, on the record, petitioner never stated on the 22nd of July that there was any possibility that the witness would later be available. It happens so quickly, don't they? I mean, it's not like proceedings in my court where we know we have in limited applications, we have motions submitted, I get the papers. That's not the way the real world works there, is it? Well, but they had 13 months. Over 13 months, there was discussion about this particular witness. Was it really? Well, it was from June 2004 through July 22, 2005. But it was because the government wanted the continuance all the time. The government was given every opportunity it requested. I guess when they showed up, they said, we want a continuance. When this guy says, I want a continuance, the judge says, denied. It doesn't bother you at all? We submit that it was not an abuse of discretion. And that particular issue, whether or not the judge abused his discretion, is a... Do you think his testimony would have been essential and critical? I looked at the affidavit. It seems to be an important affidavit. This is the one person that has some direct knowledge, apparently, even though it was through family members. What if the person testified? Do you think that might have changed the results of these cases? Well, the immigration judge helped us in that particular... The immigration judge said specifically, even if the witness had been available, that the witness didn't provide testimony of any persecution or harm to this particular person. It wouldn't have made a difference? That's correct. Does the I.J. have an obligation under this Imani very case? Is that how you say it? Does he have to find, as of record, does he have to make a finding that the witness knew the document had been altered? No, that's an important facet of this particular case. This case has absolutely nothing to do with knowledge. It has nothing to do with knowledge, first of all, because Petitioner never testified and presented any evidence with respect to knowledge. Petitioner's reply brief stating that Petitioner had no knowledge is directly contradicted by his statement in his reply brief. What if the witness did testify? Would your answer be different? I beg your pardon? What if the witness did testify? If the witness did testify, certainly that would be different in Kuski. How would that have played out if she did testify? Well, that would have been a factor to consider. And I think what's significant is that in the Kuski decision, the Seventh Circuit decision, which they cite, again, Kuski only reaffirms what this Court said in Yermani-Berhe, and that is that you cannot have an automatic determination of no credibility merely because a person submits documents that are fraudulent or altered. Did the Petitioner in Yermani-Berhe testify? I beg your pardon? Did the Petitioner testify? I didn't know it was a fake document. My recollection is that she did not. No, in Kuski, the Petitioner testified. I'm not talking about Kuski. I'm talking about Yermani-Berhe. The Petitioner testified, but she didn't testify and provide a statement whether or not she knew or did not. So in what way is our case any different from that case? Our case is different in that in Yermani-Berhe, this Court took the position that you could not have merely the fact that altered documents or fraudulent documents were submitted that established automatically, and that was the word they used, automatically, solely, based solely on the affidavit for determination of adverse credibility. And what Judge Reinhardt, as the author of that opinion, did, and it was the opinion of the Court, was he looked at the totality of the circumstances. After he said that there was, you couldn't base it solely on the altered document. You have to look at the other circumstances. And Judge Reinhardt appropriately said, in this case, there was no evidence of knowledge. You said that there was corroborating evidence. I don't know what that evidence was. The decision seems to be somewhat opaque in terms of what the corroborating evidence. But this guy, who wasn't allowed to testify because he was a truck driver, certainly would have been a corroborating witness, and then it would have been like the Yermani case, right? Again, Judge Block, we would say that you wouldn't have been a corroborating witness in the sense that he wouldn't have established any facts regarding the abuse. What if you were to be a corroborating witness? What if you were able to testify and hit the nail right on the head? Would your decision be different? If he had provided testimony as to ethnicity and as to past persecution? This case would have been like Yermani, if I'm pronouncing that correctly, right? Well, the Board has not addressed that. And so we would say that's not before the Court in this particular case. Those facts certainly aren't the facts of this particular case. And so what's significant in this case is there was no testimony regarding knowledge. And the other evidence was not sufficient to corroborate her claim. What's significant is in matter of OD, the Board laid out a methodology. Two points of law. First of all, the matter of OD would be a guiding case for this Court to look at in terms of establishing the algorithm or the methodology to go through. The matter of OD made a distinction between fraudulent documents or altered documents which are offered when a person attempts to gain entry in the United States and said, you can't consider that in terms of adverse credibility. But when you come into Court and when you offer altered or fraudulent documents as Petitioner did here, there's appropriate and inference as to an adverse inference as to credibility. I'm confused why you say he wouldn't have corroborated her testimony, wouldn't have corroborated her claim that she is a Yazidi of Yaznadi ethnicity. He, according to the declaration, he would have testified that she is indeed of Yaznadi ethnicity. Oh, if the affidavit had said that, if he had come in and testified to that effect. But she says he would have said. That's right. Okay, so it would have corroborated that part of her story and that's significant because that's the part of the birth certificate that's been altered. That's right. And the immigration judge made a point, Your Honor. I'm sorry if I misspoke myself or confused Your Honor. He made a point that there was nothing in the substance of the affidavit that would corroborate the claim of past persecution or a well-founded fear. Right, it wasn't offered for that. It was offered to prove her ethnicity. She had other testimony regarding her persecution. Well, she did have some, but unequivocally the affidavit was there to... I didn't understand the I.J. to hold that she hadn't been persecuted. He just didn't believe that she had established her status as a... her ethnic status. That's correct. Well, here's what Martissonian said. I hereby certify that Lilit, however you pronounce the name, Sagittalian, is related to me. Her mother said it. I can't pronounce these names. It's my cousin. From my mother's side, Lilit Sagittalian's father, Ashot Sagittalian, is a Yazidi. I mean, don't you think that that's corroborating evidence? Yes, I do. Yes, I do. But you just said that it's not. I was speaking in the broad context of the claim... This is what we're primarily dealing with here. We're not talking about the other aspects, which we never really get to here in this case. Yes, Your Honor. Unequivocally, let me make it clear, unequivocally, the affidavit, if it had been... So I come back to this proposition and it's unsettling to me that whenever the government says on the spot, we need a continuance, give us another 30 days, give us another six months, a whole year goes by, that's perfectly okay. But whenever, you know, this petitioner says, this guy's a truck driver and I just found out yesterday that he would not be available, can you please give me some time? He says no to that. Doesn't that trouble you? It is always troubling when on the third time the case is continued and a party doesn't produce a witness. But it wasn't continued because of any fault on the part of the petitioner. It was continued because the government always asked for the continuances. Granted, there were circumstances, but that didn't seem to be the focus of the IJ's concern. At the end of the line, he held that all against the petitioner, said that you've had three opportunities. I think that's somewhat disingenuous, don't you? What's significant, though, is the petitioner's counsel made no statement, no profit to the court that he'd had any contact with this person. There was any possibility that the person would be available at a later time. We'd submit that that absence of a profit to the trial, the immigration judge, is important. She pays the price for her incompetent lawyer? Well, her husband was involved in trying to obtain the witness and all the information came from her husband to the lawyer. Excuse me to step on your line there. No, excuse me. One of the things the IJ said is she disallowed the affidavit because in part the affidavit is not sworn under the penalty of perjury. That's not exactly correct, is it? It was another factor that the judge considered. Yeah, but I mean that's not true. It was notarized. It says subscribed and sworn to. That's right, but it does not have the phrase in the judge focused on under penalty of perjury. An affidavit doesn't have to have that phrase. It has a presumption of regularity. That's correct. An affidavit that's subscribed and sworn to, actually the under penalty of perjury was meant to make it easier so you didn't have to go to a notary and get it subscribed and sworn to. Right? That's correct. The immigration judge was also concerned that the witness was unavailable for cross-examination and where there was questions in light of altered documents being offered by the petitioner in this particular case, it was significant that the witness was unavailable. Okay, I see that you're out of time, Mr. Holt. Thank you very much. Thank you. Brad, you've got about a minute left, sir. So first, Sagatellian only made one request for continuance, not three. The request was made during the July 22, 2005 hearing and at that time she stated that they would make sure if it's on page 180 of the record, we'll make sure he's here. It was a few seconds later when the IG denied the request for continuance. Further, we don't know that basically there's no proof that the birth certificate was the only evidence of Sagatellian's Yazidi ethnicity. We don't know that her father's city of birth defines her ethnicity because there's no record of evidence to indicate that the father's city was necessary to make her a Yazidi ethnicity. The IJ, there was a translation that was submitted in the record but the IJ didn't say anything about a translation. She only referred to what was stated in the FDL report about there being overwritten entries and the line about the city of birth. But the city of birth does not say anything about a person's ethnicity. What's the probative value of it? Why did she introduce it? We don't exactly know. It could have been identification documents. It could have been identification documents. She's the proponent of the document. Yes. I see you're out of time. Thank you, Mr. McGrath. Mr. Hull, thank you. The case just argued is submitted. We want to thank you, Mr. McGrath, and your clinic for taking this case         10-56775 10-56775 10-56775 10-56775 10-56775 10-56775 10-56775 10-56775         11-56775 11-56775 11-56775 11-56775
judges: Block, Fernandez, Silverman